**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____ :
                               :
MARTE KING,                    :
                               :  Civil Action No. 09-484 (SDW)
            Plaintiff,         :
                               :
      v.                       :        **O P I N I O N**
                               :
LYDELL SHERRER, et al.,        :
                               :
            Defendants.        :
_____ :

**APPEARANCES:**

Marte King, Pro Se
Northern State Prison
#423450/897111B
Lock Bag R
Rahway, NJ 07065

**WIGENTON, District Judge**

       Plaintiff, Marte King, currently incarcerated at the
Northern State Prison, Rahway, New Jersey, seeks to bring this
action alleging violations of his constitutional rights, pursuant
to 42 U.S.C. § 1983.  He has submitted an application to proceed
with this action in forma pauperis, pursuant to 28 U.S.C.
§ 1915(e).

       At this time, the Court must review the complaint, pursuant
to 28 U.S.C. § 1915(e)(2), to determine whether it should be
dismissed as frivolous or malicious, for failure to state a claim
upon which relief may be granted, or because it seeks monetary
relief from a defendant who is immune from such relief.  For the

following reasons, Plaintiff's claims against certain defendants, as outlined herein, will be permitted to proceed.  All other defendants will be dismissed, without prejudice.

<u>**BACKGROUND**</u>

Plaintiff seeks to sue numerous defendants for violations of his Eighth Amendment right to medical care.  In particular, on March 21, 2007, during a term of incarceration at the Northern State Prison, Plaintiff had surgery on his right knee at St. Francis Medical Center in Trenton.  He was returned to the Northern State Prison infirmary, and on March 23, 2007, defendant Dr. Hochberg gave him a five-day prescription for Tylenol-3 and returned him to the general population.

Two days later, Plaintiff's bandages were falling apart and were moist.  He had his dressings changed.  The next day, he complained to the nurse that his leg was getting worse.  The nurse commented that he had just had surgery and that everything was normal.

On March 27, 2007, the next day, Plaintiff continued complaining of worse pain.  He was told that he was not getting anymore Tylenol-3, and Plaintiff explained that that was not what he wanted- that something was seriously wrong with his leg.

The next day, on March 28, 2007, Plaintiff was seen by a physician's assistant, defendant Joel Buchholtz, for an unrelated matter.  He told defendant Buchholtz that he was in extreme pain

2

and that his kidneys hurt on his right side, and that his leg felt hot and throbbing. Defendant Buchholtz, assuming Plaintiff was asking for more medication, told him that he did not have the authority to extend Plaintiff's medication orders. Plaintiff again noted that he was not looking for meds, but that something was seriously wrong.

By the next day, March 29, 2007, while getting his dressing changed, he "vehemently expressed" that he was in pain and that something was wrong. Plaintiff's leg had swollen to twice its size. Again, it was assumed he was looking for more medication. That night, he felt his symptoms worsening, and went to the nurses' station for an emergency visit. His temperature was taken and he had a fever.

Thereafter, on March 30, 2007, Plaintiff saw defendant Dr. Narshimha Reddy, explained his knee pain and kidney pain and symptoms. Dr. Reddy told him that nothing was wrong with him and that he was not getting any more medication. Plaintiff told him how his weight had dropped eight pounds in one week, and defendant Reddy told him that he may have HIV. When Plaintiff told Dr. Reddy about the kidney pain, Dr. Reddy ordered a urine sample.

The next day, March 31, 2007, Plaintiff was delirious and could not get out of bed. The inmates on his housing unit told the officers, who called the hospital. The officers were told

that if Plaintiff wanted help, he would have to walk to the hospital, which was about a quarter mile away from the general population where he was housed.  Plaintiff notes that he could not even walk short distances, and was not able to make the walk to the hospital.

After the inmates complained again about Plaintiff's condition the next day, Plaintiff again got the same answer. However, later in the evening, the inmates approached a sergeant and told him that Plaintiff was dying and medical was doing nothing about it.  The sergeant forced defendant nurse Wheeler to come to the unit and wheel Plaintiff to the hospital.  Defendant Wheeler did so, and Plaintiff was placed in the infirmary and given Bactrim.  However, defendant Wheeler also accused Plaintiff of feigning illness, but eventually took Plaintiff's blood pressure, and "somehow realized" that Plaintiff was in extreme pain.  The next day, defendant Nurse Ogundana deliberately placed Plaintiff's meds about 10 feet away forcing Plaintiff to have to get up and get them.

On April 3, 2007, Plaintiff was moved back to the general population, instead of the medical unit.  On April 4, Plaintiff explained to defendant Dr. Hochberg that he wanted to go to the hospital to have his knee checked, but defendant Hochberg told him that he was a specialist in the field and that nothing was wrong with Plaintiff.  About eight days later, Plaintiff was seen

by defendant Nurse Buchholtz again, explained the pain and that his condition was worsening.  Defendant Buchholtz told him that fluid needed to be removed from his knee.  Despite the fact that Defendant Buchholtz suffered from Muscular Dystrophy and was "shaking like a leaf," defendant Hochberg allowed Buchholtz to remove 60cc's of fluid from Plaintiff's knee.

The next day, on April 14, 2007, four weeks after surgery, Plaintiff went back to St. Francis Medical Center for a follow up.  Upon first sight of Plaintiff's knee, the doctor told Plaintiff that his knee was infected, and removed more fluid. Plaintiff explained he was being treated with Bactrim, but the doctor at St. Francis told him that Bactrim would do nothing for his knee and that he'd be "lucky if we don't have to cut your leg off."  On April 15, 2007, doctors at St. Francis performed emergency surgery "in a desperate attempt to save [his] leg and possibly [his] life."

Plaintiff contends that he was retaliated against by the medical staff because of a pending case he has concerning a former CMS employee at South Woods State Prison.

Plaintiff asks for monetary and other relief.

## DISCUSSION

### A.   Standard for Sua Sponte Dismissal

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and

Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act ... many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. § 1915A, that a court must dismiss, at the earliest practicable time, actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

6

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, ----, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, (1957), while abrogating the decision in other respects).

The Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to pass muster under the Rule 8 pleading standard.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008).  The Court of Appeals explained, in relevant part:

> [T]he pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.  This "does not impose a probability requirement at the pleading stage[ ]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

Phillips, 515 F.3d at 234 (internal citations omitted).

## B.   Section 1983 Actions

Plaintiff's claims against the defendant state actors, have their jurisdictional basis under 42 U.S.C. § 1983.  Plaintiff's claims against the federal DHS/ICE officers have their jurisdictional basis under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

7

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

C.    **Claims Against Certain Defendants**

Plaintiff names eighteen defendants in this action, along with numerous unknown defendants not yet identified.  Included in the list of these defendants is New Jersey Governor Jon S. Corzine; George Hayman, Commissioner of the Department of Corrections; Lydell Sherrer, Administrator of the Northern State

Prison; and various doctors, nurses and employees of Northern
State Prison and Correctional Medical Services ("CMS").

However, neither states, nor governmental entities that are
considered arms of the state for Eleventh Amendment purposes, nor
state officers sued in their official capacities for money
damages are persons within the meaning of § 1983.  See Will v.
Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10
(1989); Grabow v. Southern State Correctional Facility, 726 F.
Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of
Corrections is not a person under § 1983).

Furthermore, local government units and supervisors are not
liable under § 1983 solely on a theory of respondeat superior.
See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8
(1985); Monell v. New York City Department of Social Services,
436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches
only "when execution of a government's policy or custom, whether
made by its lawmakers or by those whose edicts or acts may fairly
be said to represent official policy, inflicts the injury"
complained of); Natale v. Camden County Correctional Facility,
318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil
rights action must have personal involvement in the alleged
wrongs, liability cannot be predicated solely on the operation of
respondeat superior.  Personal involvement can be shown through
allegations of personal direction or of actual knowledge and

9

acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  <u>Accord</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

This Court notes that Plaintiff's statement of claims includes the names of the individual defendants involved in the alleged wrongs against Plaintiff.  To be specific, Plaintiff names only the following defendants in his factual recitation: Correctional Medical Services, Dr. John Hochberg, Physician's Assistant Joel Buchholtz, Nurse Nadia Jeane Pierre, Dr. Narshimha Reddy, Nurse Steven Wheeler, and Nurse Felicia O. Ogundana. There are no claims against the other defendants listed by Plaintiff.

Therefore, as pled by Plaintiff, there are no facts indicating that the remaining defendants are personally involved in the matter, and they will be dismissed from this action, without prejudice.

D.   **Medical Care and Retaliation Claims**

Plaintiff's claims against the defendants noted to have personal involvement in this action will be permitted to proceed, as Plaintiff has alleged facts indicating that these defendants were aware of his medical problems and deliberately indifferent to them, causing his condition to deteriorate.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege a serious medical need and behavior on the part of prison officials that constitutes deliberate indifference to that need. See id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must allege facts indicating that his medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than

mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  See Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).

Nonetheless, "[w]here prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted).

In the instant case, Plaintiff has alleged sufficient facts for his medical care and retaliation claims[1] to proceed past <u>sua sponte</u> screening.  These defendants will be ordered to answer these claims.

### CONCLUSION

Based on the foregoing, Plaintiff's claims against certain defendants, as outlined in this Opinion, will proceed.  However, all other defendants will be dismissed, without prejudice.

An appropriate Order accompanies this Opinion.

<u>S/Susan D. Wigenton</u>
SUSAN D. WIGENTON
United States District Judge

Dated: March 5, 2009

---

[1]  In order to state a claim for retaliation, Plaintiff must show that: "(i) he engaged in constitutionally protected conduct; (ii) an adverse action was taken by prison officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;' and (iii) there was a causal relationship between the two." <u>See</u> <u>Adegbuji v. Green</u>, 2008 WL 2083142 (3d Cir. May 19, 2008)(slip copy) (quoting and citing <u>Rauser v. Horn</u> , 241 F.3d 330, 333 (3d Cir. 2001); <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000)).  "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." <u>Id.</u> at *3 (quoting <u>Rauser</u>, 241 F.3d at 334).  In this case, Plaintiff has alleged facts sufficient to withstand <u>sua sponte</u> dismissal of his retaliation claims.  The defendants involved in the alleged retaliation will be ordered to answer these claims.

13